UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, PA, as assignee and subrogee; | ) ) ) | |
| Plaintiff, | ) ) ) | CASE NO. |
| vs. | ) ) ) | |
| Pegatron Corporation | ) ) ) | |
| Defendant. | ) ) ) | |

**COMPLAINT**

National Union Fire Insurance Company of Pittsburgh, Pa., as assignee and

subrogee ("National Union") complains of Pegatron Corporation ("Pegatron") as

follows:

**THE PARTIES, JURISDICTION, AND VENUE**

1.     National Union is incorporated under Pennsylvania law and maintains

its principal place of business in New York.

2.     Pegatron is a corporation organized and existing under the laws of

Taiwan and maintains its principal place of business in Taiwan.

3.     This Court has diversity jurisdiction pursuant 28 U.S.C. § 1332

because the amount in controversy exceeds $75,000 (exclusive of interest and

costs) and the matter involves a dispute between citizens of different states, as

National Union is a citizen of Pennsylvania and New York, and Pegatron is a subject of a foreign state.

4.    Venue is proper in this district under 28 U.S.C. §§ 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.    This Court has personal jurisdiction over Pegatron because upon information and belief, Pegatron shipped products at issue in this case to this district, and Pegatron conducted business relating to the disputed products in the State of Georgia and within the Northern District of Georgia.

## PEGATRON'S CONTRACT WITH INSURED

6.    In April of 2004, Scientific-Atlanta, Inc. ("Scientific-Atlanta") entered into a Blanket Purchase Agreement ("BPA") with ASUSTek Computer, Inc. ("ASUSTek").   Pursuant to the BPA, ASUSTek agreed to sell, among other things, branded internet and cable equipment to Scientific-Atlanta, for resale and distribution to its customers.

7.    In 2005, Cisco Systems, Inc. [hereinafter "Insured"] acquired Scientific-Atlanta and succeeded to any rights under the BPA.

8.    In September 2008, ASUSTek assigned all rights and interests under the BPA to Unihan Corporation. Thereafter, on November 13, 2013, Unihan assigned all rights and interests under the BPA to Pegatron.   Pursuant to that

assignment, Pegatron assumed the obligations under the BPA and is liable for any breach of the BPA.

9.      Pursuant to the BPA, Pegatron sold branded internet and cable equipment, and wireless residential voice and networking gateways (hereinafter collectively referred to as "Equipment") to Insured.

10.     Pursuant to the BPA and subsequent assignments, Pegatron's sale of Equipment to Insured is subject to the following warranties:

> **7.1    Warranties.**  [Pegatron] hereby represents and warrants that:
> **7.1.1** All Equipment shall conform in all material respects to the Specifications and be free from defects in materials and workmanship;
> **7.1.2** All Equipment shall function under ordinary use in conformance with the Specifications;….

11.     Pursuant to Paragraph 7.2 of the BPA, Pegatron warranted the Equipment for a period of sixty-six (66) months as follows:

> **7.2    Warranty Period.**  The warranties set forth above shall apply for the period beginning on the date of [Pegatron's] invoice under which Equipment was shipped to [Insured], or to the location(s) designated by [Insured], and ending sixty-six (66) months thereafter (such period, as extended, if applicable, being referred to herein as the "Warranty Period").  The Warranties set forth above shall be passed through to [Insured's] Customers, however, [Insured], and not its customers, will interface with [Pegatron] on all warranty claims.

12.     Pursuant to Paragraph 7.3 of the BPA, Pegatron agreed to replace or repair nonconforming Equipment, as follows:

> **7.3    Warranty Replacement or Repair.**  Within the Warranty Period, [Insured] and/or such other party or parties as [Insured] may,

from time to time designate (hereinafter referred to as "[Insured] designees") shall have the right to return to [Pegatron], after receiving a return material authorization (RMA) number from [Pegatron] within the Warranty Period of an intention to return, Equipment not conforming to the above warranties and to require that [Pegatron], at [Pegatron]'s expense and option, repair such Equipment or replace such Equipment with new, conforming Equipment.

13.     Pursuant to Paragraph 18 of the BPA, Pegatron agreed to certify that all Equipment complied with Federal Communications Commission regulations:

> **18.   Warranty Replacement or Repair.**   Equipment delivered hereunder will be manufactured, labeled, certified and will perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment intended use at the time of delivery. It shall be [Pegatron]'s responsibility to secure and maintain any and all certifications and/or approvals (including, but not limited to those of the Federal Communications Commission, Underwriter's Laboratories, and the European Union – DE Conformity, Wi-Fi, Wireless Protected Access ("WPA"), ITU, and CCC) ("Covered Regulatory Compliance") required for the Equipment purchased hereunder including Equipment privately labeled for [Insured].   In order to ensure the relevant laws and regulations are satisfactorily met, [Pegatron] agrees to:
> (a)   Certify to [Insured] that the Equipment delivered hereunder is in compliance with regulations, laws, standards and/or codes….

14.     The Equipment includes wireless residential voice and networking gateways, combining a cable modem, voice adapter, router, and wireless access points (the "Wireless Devices").

15.     The Wireless Devices were designed to operate on a dual band, involving both 2.4 GHz and 5 GHz frequencies ("Specifications").

## INSURED'S CONTRACT WITH CUSTOMER

16.     On December 16, 2010, Insured agreed to sell the Equipment to its customer (hereinafter "Customer").

17.     In or about January of 2016, Customer contacted Insured to report an alleged defect in the Equipment.

18.     Customer alleged that the Equipment oscillated into the 2.5 GHz spectrum, and thus, violated Federal Communications Commission regulations.

19.     Pursuant to the MSA, Customer demanded that Insured repair or replace the Equipment.

20.     Upon receipt of Customer's demand, Insured sought to enforce the BPA and demanded that Pegatron repair or replace the nonconforming Equipment. Pegatron denied Insured's demand and refused to repair or replace the nonconforming Equipment.

21.     Given Pegatron's breach of the BPA, Insured has incurred in excess of $75,000 to repair and replace the nonconforming Equipment and to partially resolve Customer's claim.

## PLAINTIFF REIMBURSED INSURED'S LOSS

22.     Plaintiff issued insurance to Insured.  In accordance with the terms of its insurance policy, Plaintiff reimbursed Insured for its loss.

23.     In exchange for its payment, Insured assigned to Plaintiff the claims

against Pegatron. As a result of its payment and the assignment, Plaintiff is subrogated to Insured's claims against Pegatron and has a legal and equitable subrogation interest in any recovery obtained from Pegatron.

## COUNT I

## (BREACH OF CONTRACT: BLANKET PURCHASE AGREEMENT)

24. Plaintiff incorporates by reference each of its allegations in paragraphs 1 through 23 of its Complaint.

25. Pegatron expressly agreed to provide Equipment, including Wireless Devices, in accordance with the BPA.

26. Pegatron expressly agreed to sell Equipment, including Wireless Devices, warranting that it "shall conform in all material respects to the Specifications and be free from defects in materials and workmanship."

27. Pegatron expressly agreed to sell Equipment, including Wireless Devices, warranting that it "shall function under ordinary use in conformance with the Specifications."

28. Accepting Customer's allegations as true, Pegatron breached the BPA by providing Equipment (including the Wireless Devices) that (1) did not conform to the Specifications; (2) contained defects in materials and workmanship; (3) failed to perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment at the time of delivery; and (4) failed to

function under ordinary use in conformance with the Specifications.

29.     Insured performed all of its duties under the BPA.

30.     As a direct result of Pegatron's breach of its contractual obligations, Insured incurred damages and loss in an amount to be determined at trial, but which currently exceeds $75,000.

WHEREFORE, Plaintiff requests that a judgment be entered against Pegatron in an amount to be determined at trial and to declare it liable for all loss sustained by National Union and Insured, plus an award of interest, attorney's fees, costs and other damages incurred by Insured, and for such other or further relief as the Court deems equitable and just.

## COUNT II

## (BREACH OF CONTRACT - WARRANTY)

31.     Plaintiff incorporates by reference each of its allegations in paragraphs 1 through 23 of its Complaint.

32.     Pegatron expressly agreed to provide Equipment, including Wireless Devices, in accordance with the BPA and Specifications.

33.     Pegatron expressly warranted that "[a]ll Equipment shall conform in all material respects to the Specifications and be free from defects in materials and workmanship."

34.     Pegatron also expressly warranted that "[a]ll Equipment shall function

under ordinary use in conformance with the Specifications."

35.     Pursuant to the BPA, Pegatron agreed to extend the warranties for a period of sixty-six months as follows:

> **7.2     Warranty Period.** The warranties set forth above shall apply for the period beginning on the date of [Pegatron's] invoice under which Equipment was shipped to [Insured], or to the location(s) designated by [Insured], and ending sixty-six (66) months thereafter (such period, as extended, if applicable, being referred to herein as the "Warranty Period"). The Warranties set forth above shall be passed through to [Insured's] Customers, however, [Insured], and not its customers, will interface with [Pegatron] on all warranty claims.

36.     Pegatron agreed that it would repair or replace any Equipment, including Wireless Devices, which failed to conform with its warranties:

> **7.2     Warranty Replacement or Repair.** Within the Warranty Period, [Insured] and/or such other party or parties as [Insured] may, from time to time designate (hereinafter referred to as "[Insured] designees") shall have the right to return to [Pegatron], after receiving a return material authorization (RMA) number from [Pegatron] within the Warranty Period of an intention to return, Equipment not conforming to the above warranties and to require that [Pegatron], at [Pegatron]'s expense and option, repair such Equipment or replace such Equipment with new, conforming Equipment.

37.     Customer alleged that Pegatron provided Equipment (including the Wireless Devices) that, among other things (1) did not conform to the Specifications; (2) contained defects in materials and workmanship; (3) failed to perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment at the time of delivery; and (4) failed to function under ordinary use in conformance with the Specifications.

38.    Accepting Customer's allegations as true, Pegatron breached the BPA and wrongly failed to repair or replace the non-conforming Equipment.

39.    Insured performed all of its duties.

40.    As a direct result of Pegatron's breach of its contractual obligations, Insured incurred damages and loss in an amount to be determined at trial, but which currently exceeds $75,000.

WHEREFORE, Plaintiff requests that a judgment be entered against Pegatron in an amount to be determined at trial and to declare it liable for all loss sustained by National Union and Insured, plus an award of interest, attorney's fees, costs and other damages incurred by Insured, and for such other or further relief as the Court deems equitable and just.

## COUNT III

## (BREACH OF CONTRACT - REPRESENTATION)

41.    Plaintiff incorporates by reference each of its allegations in paragraphs 1 through 23 of its Complaint.

42.    Pegatron expressly agreed to certify that Equipment, including Wireless Devices, provided under the BPA will perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment at the time of delivery:

**18.    Warranty Replacement or Repair.**  Equipment delivered hereunder will be manufactured, labeled, certified and will perform in

compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment intended use at the time of delivery. It shall be [Pegatron]'s responsibility to secure and maintain any and all certifications and/or approvals (including, but not limited to those of the Federal Communications Commission, Underwriter's Laboratories, and the European Union – DE Conformity, Wi-Fi, Wireless Protected Access ("WPA"), ITU, and CCC) ("Covered Regulatory Compliance") required for the Equipment purchased hereunder including Equipment privately labeled for [Insured].   In order to ensure the relevant laws and regulations are satisfactorily met, [Pegatron] agrees to:

(a)     Certify to [Insured] that the Equipment delivered hereunder is in compliance with regulations, laws, standards and/or codes….

43.     Customer alleged that Equipment supplied by Pegatron (including the Wireless Devices) violated the Federal Communications Commission's regulations by oscillating into the 2.5 GHz spectrum.

44.     Accepting Customer's allegations as true (without admitting the truth of those allegations), Pegatron breached the BPA by failing to supply Equipment (including Wireless Devices) that performed in compliance with the Federal Communications Commission's regulations.

45.     Insured performed all of its duties.

46.     As a direct result of Pegatron's breach of its contractual obligations, Insured incurred damages and loss in an amount to be determined at trial, but which currently exceeds $75,000.

WHEREFORE, Plaintiff requests that a judgment be entered against Pegatron in an amount to be determined at trial and to declare it liable for all loss

sustained by National Union and Insured, plus an award of interest, attorney's fees, costs and other damages incurred by Insured, and for such other or further relief as the Court deems equitable and just.

## COUNT VI

## (NEGLIGENT MISREPRESENTATION)

47.    Plaintiff incorporates by reference each of its allegations in paragraphs 1 through 23 of its Complaint.

48.    Absent the BPA, Pegatron bears a common law duty to exercise reasonable care in certifying that the Equipment, including Wireless Devices, conforms to the Specifications and will perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment at the time of delivery.

49.    Accepting Customer's allegations as true, Pegatron breached its common law duty to exercise reasonable care and thus is liable for Insured's loss.

50.    When supplying the Wireless Devices, Pegatron represented that the devices (1) conformed to Specifications, including the requirement that they operate on a dual-band of 2.4 GHz and 5 GHz; and (2) would perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment at the time of delivery, including (but not limited to) Federal Communications Commission's regulations prohibiting interference with others'

use of frequencies.

51.     Upon information and belief, Pegatron represented that the Equipment conformed to Specifications and would perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment at the time of delivery when it knew or should have known such representations were false at the time they were made to Insured.

52.     Upon information and belief, Pegatron represented that the Equipment conformed to Specifications and would perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment at the time of delivery when it had no reasonable basis for believing such representations were true.

53.     Upon information and belief, Pegatron intended for Insured to rely on its representations that the Equipment conformed to Specifications and applicable law when it supplied the Equipment.

54.     Insured reasonably relied on Pegatron's representations.

55.     In reasonable reliance on Pegatron's representations, Insured accepted delivery of the Equipment, including Wireless Devices.

56.     As a direct and proximate result of Pegatron's representations and Insured's reasonable reliance thereon, Insured incurred damages and loss in an amount to be determined at trial but which currently exceeds $75,000.

Complaint

WHEREFORE, Plaintiff requests that a judgment be entered against Pegatron in an amount to be determined at trial and to declare it liable for all loss sustained by National Union and Insured, plus an award of interest, attorney's fees, costs and other damages incurred by Insured, and for such other or further relief as the Court deems equitable and just.

## COUNT VI
## (BREACH OF CONTRACT – TERMS AND CONDITIONS)

57.     Plaintiff incorporates by reference each of its allegations in paragraphs 1 through 23 of its Complaint.

58.     Upon information and belief, Insured issued Purchase Orders to Pegatron, memorializing Pegatron's sale of Equipment (including the Wireless Devices) to Insured.

59.     Upon information and belief, the purchase orders provided that in the absence of a master agreement, the sales from Pegatron to Insured were subject to the Insured's standard terms and conditions.

60.     Upon information and belief, the insured's standard terms and conditions contained (among other material terms) representations and warranties that the Equipment (including Wireless Devices) were suitable for their intended use, and required Pegatron to indemnify Insured for liability or loss incurred as a result of or arising from their products.

61.    To the extent that the BPA does not apply, Pegatron is bound by Insured's standard terms and conditions and breached those terms and conditions by providing Equipment (including the Wireless Devices) that, among other things (1) did not conform to the Specifications; (2) failed to perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment at the time of delivery; (3) contained defects in materials and workmanship; and (4) failed to function under ordinary use in conformance with the Specifications.

62.    Insured performed all of its duties.

63.    As a direct result of Pegatron's breach of its contractual obligations, Insured incurred damages and loss in an amount to be determined at trial, but which currently exceeds $75,000.

WHEREFORE, Plaintiff requests that a judgment be entered against Pegatron in an amount to be determined at trial and to declare it liable for all loss sustained by National Union and Insured, plus an award of interest, attorney's fees, costs and other damages incurred by Insured, and for such other or further relief as the Court deems equitable and just.

Dated:   August 1, 2018

Respectfully submitted,

GORDON & REES LLP

/s/ Leslie K. Eason
Leslie K. Eason

Georgia Bar No. 100186
3455 Peachtree Road, Suite 1500
Atlanta, GA 30326
Tel: (404) 978-7329
Fax: (678) 389-8475
leason@grsm.com
*Attorneys for Plaintiff*

1137889/39429824v.1

Complaint